UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
CR-14-378   (ADM/LIB)

UNITED STATES OF AMERICA,

        Plaintiff,        **DEFENDANT'S SENTENCING MEMORANDUM & MOTIONS FOR DEPARTURE & VARIANCE AMENDED**

v.

BRANDON SIMONSON,

        Defendant.

The defendant, through counsel undersigned, pursuant to FRCP 32 and LR 83.10(e) , offers the following with regard to factors affecting this court's sentencing decisions.

Mr. Simonson has only two objections to the final Presentence Report.   Failure to note his minimal role in the offense and error at paragraph 57 of the Pre-sentence Report where the calculation is for methamphetamine actual rather than the 50 grams or more of Methamphetamine admixture noted in the plea. Mr. Simonson pled guilty to the top count of the Indictment with the above proviso regarding relevant quantity.

Mr. Simonson is subject to the mandatory minimum, is regarded as a career offender and is the only defendant of the several eligible to have been subject to an 851 letter.

Mr Simonson first asks the Court to consider granting credit for his time in custody from the time of his arrest and detention on state charges (dismissed following his Indictment and transfer into Federal custody) to his date of sentencing and transfer to BOP custody.   The defense notes that all of his time in federal custody to date has

been served at Sherburne County jail, in substantially more severe confinement as the Court knows than the confinement he will serve his sentence in in federal custody.

With regard to sentencing factors Mr. Simonson asks the Court to consider: 1- his actual minimal role in the offense, 2- the government controlled construction of the quantity and claimed quality of the 'drugs' that Simonson received as his sole act in the conspiracy[1],   3- the substantial over-representation of his criminality in the calculated criminal history. 4- the inapt application of the career offender to the actual facts, 5-   his status as the only defendant of several eligible to receive 851 designation.

OFFENSE ROLE   Mr. Simonson is characterized as an average participant in this scheme, but the known facts contradict that decision.   The Court is familiar with the details of this case as Mr. Simonson faces this Court both as the last to be sentenced and the tail defendant (8) in the government's Indictment.   Mr. Simonson borrowed money (500.00) and later received a drivable old pickup (at best 1500.00) from men he knew from his time in prison to be loan sharks and thieves.   The money went to make rent on an apartment required for him to meet the independent living requirement of his probation.   The running vehicle was necessary to keep the job he also needed to meet probation requirements.   He took on a debt because no friends or family could help, and he took it from the worst, but only choice, he had.   He knew he would have to pay back. He knew that the payback would be high and could well be illegal. What he did not know -- though the rest did – is what that payback might be, fencing stolen goods, collecting debts, or as he learned just before his arrest: selling a bag of drugs.   He knew

---

[1] quantity and quality as claimed by government but represented by four ounces of some non-drug material delivered in a McDonald's bag.

he had to payback and he then knew what the payback was – end of story.  Mr. Simonson, despite his record and his career offender and 851 designation is at worst a minor participant in the conspiracy and on the actual facts is properly characterized as having a minimal role. His knowing receipt of the bag and assumed contents was the requested payback and the close of his desperation borrowing.

ACTUAL DRUG QUANTITY AND QUALITY   The paper bag dropped in Simonson's vehicle contained a 4 ounce package representing the volume and weight of a package of methamphetamine.   The government suggests that the fake package actually represents 4 ounces of pure methamphetamine.   There is no particular reason that the package weighed as much as four ounces, the evidence shows that Giles dictated that the package should be *no more than* four ounces.   There is no reason to believe and plenty of reason to doubt, that actual drug dealers rather than government operatives would give four ounces of *pure methamphetamine* to Simonson, a man they knew from prison who owed them a debt and needed to do payback.   It is far more reasonable to believe that they would risk less drug in quantity (as Giles - still unaware - advised) and of far lesser quality.   It is unreasonable to consider the governmentally decided quantity and quality as appropriate bases for calculation.

The defense notes here that the PSR at A. 1   notes Simonson as being involved *with 50 grams or more of methamphetamine mixture*.   However later at paragraph 57, while correctly noting that the court may approximate quantities (2D1.1 comment 5) the PSR then accepts the constructed quantity and claimed quality put forward by the government and assigns a Base Offense level of 30 mis-apprehending a stipulation and the governmental claim of purity.   The stipulation was to *possession of the*

*government's package*, which had a weight determined by governmental choice.

The evidence is clear that there was no discussion nor typical transactional weighing and analysis of purity in this case, simply the delivery of a fast food bag, never opened.  On the facts here the weight was purely in the government's hands and the quality literally the government's to dictate.

While the court may approximate quantities, the defense suggests that the government operation involving this defendant is effectively sentencing entrapment and analogous to the reverse stings detailed in 2D1.1 comment 27.

The evidence against this defendant suggests that the likely transaction in this case on the facts and not controlled by government agency would reasonably have involved no more than two ounces of middling quality methamphetamine and should reasonably be assigned a Base Offense level of 24 or 26.

OVERREPRESENTATION OF CRIMINALITY   The PSR found defendant to have 23 units calculated from past convictions.  Defendant clearly has dealt with severe drug addiction for much of his adult life and has amassed the great majority of his criminal score from drug possession charges. Fourteen of the total 23 points (para. 78 – 89) were amassed from 21 arrests in a single six$^+$ month period of extreme addiction.

The two prior charges of possession with intent underlying the career offender assessment further underscore the addiction fueled nature of Mr. Simonson's entire record. Though both charges involved separately packaged drugs, the total quantities involved  --- 3.1 and 6.9 grams -- were personal use quantities for addicts and neither case demonstrated any evidence of actual or attempted sales -- the intent element was based solely on the discrete packaging in each case, not on any claim of large quantity.

The circumstances and relatively rural location, removed from readily available sources, suggest multiple purchases rather than any sales.

On even cursory examination of the criminal history, it is clearly the history of an addict struggling to gain occasional bouts of sobriety through an adult lifetime of addiction and use.

CAREER OFFENDER   As noted, the prior qualifying crimes are far more testament to addiction and the fear of running out of supply than actual trafficking.

851 DESIGNATION    As noted, Mr. Simonson alone received 851 status among those in the conspiracy eligible for such designation.   The Defense notes in this context the analysis in the "Holder memo" (Memorandum, August 9, 2013[2])

> . . . application of this policy may also require a motion
> to withdraw an [851] information previously filed . . .

The Smarter Sentencing Act of 2015, introduced and currently in committee in both houses also significantly impacts use of 21 USC 851[3].

GUIDELINE SENTENCING FACTORS

The defense asks for the following corrections to the calculated Guideline Range. Finding defendant minimally involved in a single act and as a payment of debt and crediting 4 points.   Finding the Base Offense level to be 26 rather than 30 based on a reasonable evaluation under 4D1.1 and noting that all aspects of drugs were controlled by the government.   Finding the Defendant's Criminal History to be substantially exaggerated and justifying a departure to criminal history category V per 4A1.3(b) --

---

2 http://www.justice.gov/sites/default/files/oip/legacy/2014/07/23/holder-memo-charging-sentencing.pdf
3 S. 502, H.R. 920, full text:   http://thomas.loc.gov/cgi-bin/query/z?c114:S.502:

limited due to Career Offender status.

The Supreme Court has found that the Guidelines in toto, are, in fact, only referential guidelines and that trial courts must find and impose appropriate sentences for the particular defendant before them and pursuant to their statutory authority under 3553(a).  *United States v. Booker*, 543 U.S. 220 (2005).

Section 3553(a), mandates a sentence "sufficient, but not greater than necessary to comply with the purposes set forth . . ."   those 'purposes' are:

   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

   (B) to afford adequate deterrence to criminal conduct;

   (C) to protect the public from further crimes of the defendant;

   (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

Section 3553a requires review of 7 factors:   the nature and circumstances of the offense; history and characteristics of the defendant; the need for the sentence imposed; the kinds of sentences available; the guidelines sentence; policy statements of the Sentencing Commission; the avoidance of unwarranted sentencing disparities; and restitution to victims.

Review of the 3553a factors make variance appropriate in this case on the following bases.

Lengthy pre-trial incarceration.   Mr. Simonson has been incarcerated in county jails since his arrest on October 23, 2014. He has not been in the open air

since his arrest and has had few if any opportunities for any programming.

Role in the Offense.   Mr. Simonson is in an equivalent role to other one-time transactional actors in a drug conspiracy. Mr. Simonson had a debt to repay and was involved only to the extent necessary to repay that debt.

Career Offender.   Mr. Simonson's criminal history is that of a seriously addicted drug user, not a dealer and the impact of career offender status greatly exaggerates his actual culpability and exacerbates sentencing disparities between co-defendants. Because the guidelines only allow for a one level departure, the continuing inequity requires a variance be made.

Because of the mandatory minimum in play here and given the actual level of involvement of the defendant in the conspiracy there is no concern that the variances requested would trigger any concern that the defendant is not being justly punished.

The defense asks that the Court in light of the above make the requested downward departures and variances from the guidelines and impose a sentence of no more than 120 months. Such a sentence on the facts and circumstances herein provides a sentence sufficient but no more than necessary in this case.

Date:                                                           Respectfully submitted,

                                                                  *s/ Tom Dunnwald*

                                                                Thomas G. Dunnwald #139828
                                                                204½ Garland Building
                                                                201 Hennepin Av. NE
                                                                Minneapolis, MN 55414
                                                                612/347-0043 ph -0044 fax

                                                                ATTORNEY FOR SIMONSON